# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                                                    Civ. No. 20-727 GJF/GBW

CANYON DEL BUEY, LLC, et al.,

     Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Plaintiff, United States of America's, "Motion for Summary Judgment and Memorandum in Support" [ECF 22] ("Motion"). The Motion is fully briefed. ECFs 35 (response) & 46 (reply). On October 8, 2021, Defendants, Canyon del Buey, LLC, Craig Thiessen, and Lance Thiessen, filed a "Motion for Leave to File Surreply" [ECF 48] ("Surreply Motion"). The Surreply Motion is also fully briefed. ECFs 49, 50, & 51. The Court heard extensive oral argument on these motions on November 18, 2021. ECF 54 (clerk's minutes); ECF 55 (transcript). For the reasons stated below, Defendants' Surreply Motion is **DENIED** and Plaintiff's Motion is **GRANTED**.

## I.   INTRODUCTION

The instant legal skirmish is the third act in a legal drama involving the rights and interests in certain National Forest System ("NFS") lands—denominated as the Canyon del Buey Allotment (the "Allotment")—located in the Apache National Forest in New Mexico.[1] Defendants once held

---

[1] In August 2019, Defendants Lance Thiessen and Canyon del Buey, LLC (the "LLC") challenged the U.S. Forest Service's cancellation of their grazing permit under the Administrative Procedure Act ("APA"). *Thiessen, et al. v. Irwin, et al.*, 19cv779 CG/SMV (D.N.M.), ECF 1. In March 2020, the court dismissed that complaint without prejudice for improper service. 2020 WL 1033180, at *1 (D.N.M. Mar. 3, 2020). Defendants Lance Thiessen and the LLC never refiled their APA challenge. In July 2020, however, Lance's brother, Craig, and the LLC brought suit under the Quiet Title Act ("QTA"), requesting that this Court declare that "'under the [QTA] … [the LLC] is the surface owner of the [Allotment] by operation of specific legislative grants of Congress.'" *Thiessen v. United States*, Civ. No. 20-727 GJF/GBW, 2021 WL 1090702, at *4 (D.N.M. Mar. 22, 2021), *appeal docketed*, No. 21-2053 (10th Cir. May 19,

a permit issued by the United States Forest Service ("USFS") to graze livestock on the Allotment. The USFS cancelled the permit in November 2018, ECF 22-4, for reasons that are no longer contested. ECF 55 at 55:9-16. Plaintiff's Complaint alleges that, despite the USFS's cancellation of their permit, Defendants have continued to graze 200-300 head of cattle on the Allotment. Defendants, however, take the position that they do not need USFS authorization to graze livestock, insisting that they own certain property rights that give them an inherent right to graze livestock on the Allotment.

In moving for summary judgment, Plaintiff asks this Court to (1) render a declaratory judgment that Defendants' use of the Allotment violates federal regulations, (2) eject Defendants and their livestock from the Allotment, (3) award compensatory damages in an amount to be determined later for the harm caused by Defendants' alleged trespass, and (4) issue a "permanent injunction prohibiting Defendants from placing or allowing unauthorized livestock on NFS lands." ECF 22 at 13–15.

## II.   DEFENDANTS' MOTION FOR LEAVE TO FILE SURREPLY

After Plaintiff filed its Reply [ECF 46] and the required notice that briefing of the summary judgment motion was complete [ECF 47], Defendants moved for leave to file a surreply. ECF 48. Defendants urge the Court to permit a surreply because (1) Plaintiff's Reply included the Second Declaration of Clyde J. King, Regional Surveyor, United States Department of Agriculture, Forest Service, Southwestern Region, which relied on new evidence; (2) Mr. King's second declaration presented new arguments; and (3) "Plaintiff's argument in its reply brief misstates Craig Thiessen's ownership of the water rights in the" Allotment. ECF 48 at 1–2. For its part, Plaintiff

---

2021). The United States moved to dismiss, asserting that the lawsuit was time-barred under the QTA's statute of limitations. *Thiessen*, 2021 WL 1090702, at *6. This Court agreed and dismissed that lawsuit with prejudice, *id.* at *9, a decision now on appeal before the Tenth Circuit.

objects to a surreply, arguing that (1) Defendants have failed to identify *any* new evidence Mr. King relied on; (2) Mr. King's second declaration did not make new arguments but instead merely rebutted the arguments made in Defendants' Response; and (3) Plaintiff's Reply did not mischaracterize whatever interests Defendant Craig Thiessen has in the Allotment but instead pointed out defects in Defendants' Response including the failure to establish a genuine issue of material fact sufficient to preclude summary judgment. ECF 49 at 1–2.

"Generally, the nonmoving party should be given opportunity to respond to new material raised for the first time in the movant's reply." *Green v. New Mexico*, 420 F.3d 1189, 1996 (10th Cir. 2005) (citing *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998)). "Material," in this context, includes both new evidence and new legal arguments. *Id.* (citing *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n. 13 (10th Cir. 2003)). If, however, the Court does not rely on new material in reaching its decision, "'it does not abuse its discretion by precluding a surreply.'" *Id.* (quoting *Beaird*, 145 F.3d at 1164–65). The Court addresses each of Defendants' arguments in turn.

First, although the Court agrees that new evidence was raised in the reply, a surreply is not warranted here. Plaintiff's Reply included a warranty deed filed in Catron County, New Mexico, that was not included in its opening brief. *See* ECF 46-2. For reasons explained *infra*, however, the Court does "not rely on [such] material in reaching its decision." *Green*, 420 F.3d at 1996; *see also infra* Section VIII.

Second, the Court disagrees that Mr. King raised new arguments warranting a surreply. As discussed *infra*, Defendants argued in their Response that they own certain property interests that allow them to graze livestock on the Allotment without a USFS permit. *See* ECF 35 at 6–16. In his second declaration, Mr. King merely pointed out defects in the evidence that Defendants

propounded in support of their alleged ownership of such property interests. *See* ECF 46-1. Consequently, the content of Mr. King's second declaration does not warrant a surreply. *See, e.g., Rowley v. APD Detective Kevin Morant*, Case No. 10CV1182 WJ/GBW, 2014 WL 12656606, at * 2 (D.N.M. June 27, 2014) ("A reply that simply 'points out the defects' in the response does not introduce new material." (quoting *Green*, 420 F.3d at 1196–97)).

Third, the Court does not find that Plaintiff's alleged "misstatements" regarding Defendant Craig Thiessen's water interests in the Allotment amount to either new evidence or new legal arguments. In fact, Plaintiff simply argued that even assuming that Craig Thiessen owned the water rights on the Allotment, those interests would still not confer upon Defendants the right to *graze* on the Allotment. ECF 46 at 18–19 (Plaintiff asserting that "ownership of water rights does not negate the requirement that a rancher obtain a grazing permit before allowing cattle to graze on federal lands.").[2] Because Defendants expressly argued that grazing rights are attendant to their alleged water rights, ECF 35 at 10–11, Plaintiff's arguments to the contrary merely rebutted Defendants' position and did not raise new legal arguments. *Rowley*, 2014 WL 12656606, at *2.

For these reasons, the Court will deny Defendants' request to file a surreply and will restrict the scope of its analysis to the issues raised only in Plaintiff's Motion for Summary Judgment [ECF 22], Defendants' Response [ECF 35], and Plaintiff's Reply [ECF 46].

---

[2] Plaintiff reiterated this point at the hearing, noting that "even if Defendants own water rights … it's immaterial because they would still need a permit to graze livestock on federal land." ECF 55 at 17:5-10.

### III.  UNDISPUTED MATERIAL FACTS ("UMFs")[3]

1. The Allotment is in the Apache National Forest in the state of New Mexico, which is administered by the Quemado Ranger District of the Gila National Forest.

2. The Allotment is "comprised of 47,962 acres with the following metes and bounds legal description: T2S, R16W, Sec. 25. T2S, R15W, Sec. 15, 19-22, 27-34, T3S, R15W, Sec. 3-10, 13-36. T3S, R14W, Sec. 16-20, 30, 31. T4S, R14W, Sec. 6-8, 18, 19. T4S, R15, Sec. 1-24, 27-34."

6. On November 21, 2017, the USFS issued Term Grazing Permit No. 61493 (the "Permit") to the LLC, which authorized the grazing of 344 cow-calf pairs on the Allotment.

8. Defendants Craig and Lance Thiessen own the LLC, and Defendant Craig Thiessen owns the livestock currently on the Allotment.

9. On November 29, 2018, the Quemado District Ranger cancelled the Permit because Defendant Craig Thiessen was convicted for "'knowingly taking threatened wildlife"[4] and because Defendants Lance and Craig Thiessen made misrepresentations in their application for the Permit.

10. On November 29, 2018, the Quemado District Ranger advised Defendants that the Permit was cancelled.

11. On January 7, 2019, the LLC appealed the cancellation decision. The Quemado District Ranger prepared a statement responding to the appeal, counsel for the LLC replied to the Quemado District Ranger's statement, and Defendants Lance and Craig Thiessen attended and participated in the oral presentation to the Appeal Deciding Officer.

---

[3] Each of these facts are taken from Plaintiff's statement of Undisputed Material Facts in its opening brief. ECF 22 at 3–7.  These facts were not disputed by Defendants. *See* ECF 35 at 3–5. For convenience, the facts identified in Section IV(A) are enumerated as they are in Plaintiff's statement of Undisputed Material Facts and the facts identified in Section IV(B) are lettered as they are in Defendants' statement of Undisputed Material Facts.

[4] The Court has previously detailed this incident in *Thiessen*, 2021 WL 1090702, at *3 ("In February 2015, while his permit for this Allotment was still active, Craig Thiessen 'knowingly took a Mexican gray wolf' by 'captur[ing] [it] in a leg hold trap on [his] grazing allotment … and hit[ting] it with a shovel.'").

12. On June 10, 2019, the Forest Supervisor for the Gila National Forest, as Appeal Deciding Officer, affirmed the Quemado District Ranger's decision to cancel the Permit.

13. The Regional Forester for the Southwestern Region of the USFS conducted a second-level discretionary review of the appeal.

14. By letter dated July 2, 2019, the Regional Forester advised Defendants Lance Thiessen and the LLC, of his decision to uphold the decision to cancel the Permit, making the cancellation final and effective.[5]

15. The Regional Forester directed Defendants Lance Thiessen and the LLC, to remove all livestock from the Allotment by August 31, 2019.

16. On July 12, 2019, the Quemado District Ranger reminded Defendants Lance Thiessen and the LLC, to remove all livestock from the Allotment by August 31, 2019, and provided a draft Livestock Removal Plan.

18. Defendants did not remove their livestock from the Allotment by August 31, 2019.

19. On November 20, 2019, the USFS advised Defendants Lance Thiessen and the LLC, that continued grazing was prohibited and that the LLC would be charged unauthorized use fees beginning on September 1, 2019, pursuant to 36 C.F.R. § 222.50(h), until all livestock were removed from the Allotment.

---

[5] In their Response, Defendants originally disputed fact #14 on the basis that the cancellation of the permit was neither final nor effective. ECF 35 at 4. In doing so, however, Defendants overlooked that they had already twice admitted in their Answer that the cancellation was final and effective. *See Thiessen v. United States*, 20cv364, ECF 28 ¶¶ 3, 20 (Defendants' Answer for the instant action filed in cause number 20cv364 because the two cases were consolidated at that time). These two paragraphs in the Answer corresponded to ¶¶ 3 and 51 of the United States' Complaint [ECF 1], each of which alleged that the cancellation of the permit was final and effective. At oral argument, defense counsel conceded that, given Defendants' Answer, fact #14 should be considered undisputed. ECF 55 at 55:9-16; *see also Gynberg v. Bar S Servs., Inc.*, 527 F. App'x 736, 739 (10th Cir. 2013) (unpublished) (observing that "'[a]dmissions in the pleadings … are in the nature of judicial admissions binding upon the parties, unless withdrawn or amended.'" (quoting *Missouri Housing Dev. Comm'n v. Brice*, 919 F.2d 1306, 1314 (8th Cir. 1990))). The Court agrees and considers as established fact that the USFS's cancellation of Defendants' grazing permit was both final and effective.

20. Since August 31, 2019, USFS staff have monitored the Allotment, observing that livestock bearing the brand registered to the LLC, with the New Mexico Livestock Board, remain on the Allotment, along with Defendant Craig Thiessen's personal vehicle. USFS staff have also observed livestock consuming and trampling grass and other plants on the Allotment.

## IV.  DISPUTED MATERIAL FACTS

In this section, the Court addresses those facts proffered by Plaintiff that Defendants have sought to controvert.  With respect to each fact, the Court explains whether it considers the fact to be material and/or genuinely disputed by admissible evidence.

### A.  Plaintiff's Disputed Material Facts[6]

3. Plaintiffs assert that the official Bureau of Land Management Master Title Plats and USFS Land Status Maps show that the Allotment is part of the Apache National Forest. ECF 22 at 3 (citing ECFs 22-1 at 10 & 22-2 at 1–2). While Defendants admit that the Allotment is part of the Apache National Forest, they deny "that the surface grazing estate and water rights are owned" by Plaintiff. ECF 35 at 2 (citing ECF 35-1 at 1–2). The Court finds that Defendants' objection is in the nature of a legal conclusion and considers this fact undisputed.

4. Plaintiff states the "federal lands that comprise the Apache and Gila National Forests, including the lands within the [Allotment], were acquired by the United States from Mexico under the February 2, 1848, Treaty of Guadalupe Hidalgo, and first set aside as forest reserve lands by presidential decree in 1899." ECF 22 at 3 (citing ECF 22-1 at 2). Defendants admit that the Allotment was "acquired by the United States from Mexico as alleged, but deny that the surface

---

[6] In support of their rebuttals to Plaintiff's statement of Undisputed Material Facts ## 3, 4, 5, 14, 22, 23, Defendants also cite the following authority: Act of July 26, 1866, ch. 262, §§ 9–11, 14 Stat. 251, 253; Act of July 9, 1870, §§ 12–17, 16 Stat. 217, 217–18; Act of Mar. 3, 1875, ch. 151, § 3, 18 Stat. 481, 482; *Basey v Gallagher*, 87 U.S. 670 (1874); *Atherton v. Fowler*, 96 U.S. 513 (1877); *Jennison v. Kirk*, 98 U.S. 453 (1878); *Curtin v. Benson*, 22 U.S. 78 (1911); *Shaw v. Kellogg*, 170 U.S. 312 (1898). ECF 35 at 3–5.

grazing and vested water rights are owned by the United States." ECF 35 at 3 (citing ECFs 35-1 at 2–3, 35-2). The Court finds that Defendants' objection is in the nature of a legal conclusion and considers this fact undisputed.

5. Plaintiff contends that the land in the Allotment, with the exception of 160 acres held by private patent from 1891 to 1969 (when it was deeded to Plaintiff), has been owned continuously by Plaintiff since 1848. ECF 22 (citing ECF 22-1 at 3). Defendants deny that Plaintiff owns the Allotment insofar as water rights and grazing rights are concerned. ECF 35 at 3 (citing ECFs 35-1 & 35-7). For reasons explained *infra*, the Court concludes that Defendants have not propounded admissible evidence sufficient to controvert Plaintiff's contention that its ownership of the Allotment includes the right to permit or deny grazing privileges. As for water rights, the Court concludes that dispute is not material to the instant Motion.

7. Plaintiff alleges that Defendant Lance Thiessen signed the Permit as "Permittee or His Authorized Agent" and that misrepresentations were made regarding Defendant Craig Thiessen's managerial role in the materials submitted in support of the permit application. ECF 22 at 4 (citing ECF 22-4 at 2). Specifically, Defendant Lance Thiessen did not disclose that Defendant Craig Thiessen was "involved in managing the livestock on the allotment." *Id.* Defendants admit that Defendant Lance Thiessen signed the permit as "Permittee or his Authorized Agent" but deny that such misrepresentations were made. ECF 35 at 3–4 (citing 35-7 at 3–6). Based on Defendants' withdrawal of their contention that the cancellation of the Permit was anything other than final and effective, the Court considers this dispute to be immaterial.

17. Plaintiff contends that in August 2019, Lance Thiessen advised the Quemado District Ranger that he intended to remove the LLC's livestock from NFS land by August 31, 2019. ECF

22 at 6 (citing ECF 22-4 at 4). Defendants deny this allegation. ECF 35 at 4 (citing ECF 35-8).[7] At the hearing, Plaintiff conceded that fact #17 is immaterial, ECF 55 at 30:1, and the Court agrees.

21. Plaintiff asserts that Defendants currently graze about 286 mother cows and 142 calves on the Allotment. ECF 22 at 6 (citing ECF 22-4 at 4–5; *Thiessen*, 2021 WL 1090702, at *3). Defendants state that LLC cattle have largely been removed from the Allotment, with three mother cows and two horses remaining. ECF 35 at 5 (citing ECF 35-1 at 2). The Court considers this dispute immaterial as the number of cattle trespassing on the Allotment is relevant *only* to damages, an issue not before the Court in the instant Motion.

22. Plaintiff states that as a result of Defendants' continued unauthorized use of the Allotment, the USFS cannot act "consistent with its range program," including "but not limited to, efficiently planning and carrying out prescribed burns to lessen wildfire risk; issuing a grazing permit to a lawful user to allow grazing in accordance with the goals and standards for the forest's range program; monitoring utilization of forage; managing grazing to minimize damage to forest resources and allowing for multiple use of the forest; and implementing any necessary measures for the protection, conservation, and recovery of threatened or endangered species that may be present in the [Allotment] as required by federal law." ECF 22 at 7 (citing ECF 22-4 at 5). Defendants respond that as the owners of the Allotment, their use is not unauthorized. ECF 35 at 5 (citing ECF 35-1 at 1–2). The Court does not consider this dispute material because Plaintiff's alleged ability to redeploy the Allotment to a different permittee or for any other purpose is not before the Court in the instant Motion.

---

[7] Defendants appear to have mistakenly titled *Lance* Thiessen's declaration as the "Declaration of Craig Thiessen." *See* ECF 35-8. The Court understands this document to be *Lance* Thiessen's (not *Craig* Thiessen's) declaration because the document appears to be signed by Lance Thiessen and the signature block reads "Lance Thiessen Owner, Canyon del Buey, LLC." *See id.*

23. Plaintiff contends that Defendants' continued unauthorized use of the Allotment interferes with its ecosystem management and operations. ECF 22 at 7. Specifically, Plaintiff asserts that Defendants' use has interfered with the USFS's ability to conduct prescribed burns. *Id.* (citing 22-4 at 6). Again, Defendants respond that their use is not unauthorized because they own the Allotment. ECF 35 at 5 (citing ECF 35-1 at 1–2). The Court does not consider this dispute material because Plaintiff's alleged ability to redeploy the Allotment to a different permittee or for any other purpose is not before the Court in the instant Motion.

24. Last, Plaintiff claims that "to date," USFS staff have not seen evidence that LLC livestock have been removed from the Allotment. ECF 22 at 7 (citing ECF 22-4 at 6). Defendants deny this claim, stating that "[c]attle have been removed from the [A]llotment." ECF 35 at 5 (citing ECF 35-1 at 2). The Court considers this dispute immaterial as the number of cattle trespassing on the Allotment is relevant *only* to damages, an issue not before the Court in the instant Motion.

**B. Defendants' Additional Material Facts**

In their Response, Defendants included three additional facts they contend are undisputed.

A. Defendants submit that their predecessors-in-interest to the Allotment paid for and registered in the Surveyor General's Office in Santa Fe, New Mexico, surveys of the Allotment which were officially recorded in 1882. ECF 35 at 5 (citing ECF 35-7 at 12–17). Plaintiff objects, asserting that the evidence provided by Defendants—several plats—are unauthenticated and therefore cannot be considered as valid summary judgment evidence. ECF 46 at 8. Alternatively, Plaintiff argues that the plats do not show that the Allotment was ever held in private ownership. *Id.* The Court agrees with Plaintiff that the plats are not authenticated, but recognizes that Defendants acquired them from the USFS's own records.  Even if the Court sets aside the lack of authentication and considers the evidentiary merit of the plats in the light most favorable to

Defendants, the Court finds that the plats are not evidence of title and do not show the Allotment to be privately owned. The Court also notes that Defendants propounded no expert testimony that would cause the Court to attribute any meaning to the plats not suggested by their plain language. Consequently, the Court considers this alleged undisputed fact to be immaterial.

B. Defendants allege that "Surveys in US Production 1950-1955 [sic] acted as patents in favor of the prior settlers, who were Defendants' predecessors-in-interest to [the Allotment],  and which conferred vested water rights and surface grazing rights on the prior settlers." ECF 35 at 6 (citing ECF 35-7 at 12–17). Plaintiff challenges this assertion by pointing out that Defendants have not explained how these former settlers are their predecessors in interest. ECF 46 at 9. Further, Plaintiff argues that facts relating to Defendants' alleged ownership of *water* rights on the Allotment are immaterial to whether Defendants own the right to *graze* on the Allotment. *Id.* The Court agrees that the Surveys, viewed in the light most favorable to Defendants, do not prove or even support Defendants' claim to ownership of grazing rights on the Allotment. The Court notes again that Defendants propounded no expert testimony that would cause the Court to attribute any meaning to the Surveys not suggested by their plain language.  Consequently, the Court considers this alleged undisputed fact to be immaterial.

C. Last, Defendants assert that "[t]he 1866 Mining Act granted protection to the possessors and owners of vested water rights and" those rights cannot be taken away by subsequent government action. ECF 35 at 6. Plaintiffs respond that (1) this "fact" is not a fact and is instead a legal theory; (2) the United States is not prohibited from taking property; and (3) water rights do not confer the right to graze on NFS lands without USFS authorization. ECF 46 at 9. The Court considers this dispute immaterial because this alleged fact is instead a legal conclusion.

## V.  ISSUES

The primary issue presented in the Motion is whether Defendants have put forth sufficient admissible evidence to give rise to a genuine dispute of material fact as to whether they may graze livestock on the Allotment without USFS authorization. Answering this question requires the Court to address two separate inquiries. The first is whether Defendants own outright a surface grazing estate on the Allotment. The second revolves around whether Defendants' alleged ownership of water rights on the Allotment implicitly confers an attendant grazing right. If the Court determines that there is no genuine dispute of material fact that Defendants *were* required to have USFS authorization to graze cattle on the Allotment, the Court must then decide whether Plaintiff is entitled to judgment as a matter of law that Defendants' unauthorized use violates federal regulations and constitutes a trespass.

## VI.  PARTIES' ARGUMENTS

Plaintiff asserts that the Allotment is NFS land and governed by USFS regulations. ECF 22 at 9–12. Under those regulations, grazing and livestock use on NFS lands must be authorized by a grazing or livestock permit. *Id.* at 12 (citing 36 C.F.R. § 222.3(a)). Because Defendants as of November 2018 no longer held such a permit, Defendants' continued occupation of the Allotment violates federal regulations and constitutes a trespass. *Id.* at 13.

For their part, Defendants insist that the ownership interests in the Allotment are split such that the LLC owns the grazing and water rights, and Plaintiff owns the remainder. Defendants emphasize that their predecessors in interest have held these rights since the 1800s and that these "prior existing rights" exempt the LLC from needing a grazing permit and have been recognized and protected in a litany of legislative acts including the Mineral Lands Acts of 1866/1870/1872, the Grazing Rights Act of 1875, the Gila Reserve Proclamation, the Federal Land Policy and

Management Act of 1976, the National Forest Management Act of 1976, the National Forest Disposal Act of 1912, the Forest Reserves Organic Act of 1897, the Cooperative Improvement Fund Act of 1914, and the Taylor Grazing Act of 1934. *See id.* at 6–16. Moreover, Defendants say that although they and their predecessors have for decades sought and held USFS grazing permits, those permits did not confer the *right* to graze but instead merely *regulated* grazing. Thus, Defendants contend that there is a genuine dispute of material fact as to whether the USFS's revocation of the Permit acted to revoke Defendants' right to graze cattle on the Allotment.

## VII. APPLICABLE LAW

### A. Summary Judgment Standard

A "court *shall* grant summary judgment if the movant shows that there is no genuine dispute as to any material fact *and* the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). The entry of summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the evidence favoring the nonmoving party is insufficient, there is no issue for trial. *Id.* at 249.

At the summary judgment stage, "a plaintiff's version of the facts must find support in the record." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). As with any fact asserted by a party in a summary judgment motion, the non-movant must point the Court to such support by "citing to particular parts of materials in the record[.]" Fed. R. Civ. P. 56(c)(1)(A). And under our Local Rules, "[a]ll material facts set forth in the [motions and responses] will be deemed undisputed unless specifically controverted." D.N.M.LR-Civ. 56.1(b).

A party asserting that a "fact cannot be or is genuinely disputed must support the assertion by … citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "A party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Of course, however, some documents are self-authenticating, including domestic public documents that are signed and sealed as well as certified copies of public records. Fed. R. Evid. 902(a)(1), (a)(4). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact … the court may … consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Because the Court decides motions for summary judgment by viewing the facts in the light most favorable to the non-moving party, the Court obeys three general principles. First, the Court's role is not to weigh the evidence, but only to assess the threshold issue of whether a genuine issue exists as to material facts such that a trial is required. *See Liberty Lobby*, 477 U.S. at 249. "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted). Second, the Court must resolve all reasonable inferences and doubts in favor of the non-moving party and construe all evidence in the light most favorable to the non-moving party. *SEC v. Thompson*, 732 F.3d 1151, 1156–57 (10th Cir. 2013). Third, the Court cannot decide any issues of credibility. *See Liberty Lobby*, 477 U.S. at 255. "[T]o survive

the ... motion, [the non-movant] need only present evidence from which a jury might return a verdict in his favor." *Id.* at 257.

### B.  Permitting Requirement for Grazing Livestock on NFS Land

As pertains to this case, an allotment is a term of art referring to a designated parcel of NFS land available for livestock grazing. 36 C.F.R. § 222.1(b)(1). The Secretary of Agriculture is responsible for regulating "grazing on the national forests" and may "issue permits for the grazing of livestock for periods not exceeding ten years." 16 U.S.C. § 580. Thus, those wishing to make use of an allotment must be authorized to do so via a grazing or livestock use permit. § 222.3(a). Indeed, placing unauthorized livestock on NFS land is prohibited. § 261.7(a).

 Grazing permits are term-limited and conditional.  They do not convey a right, title, or interest held by the United States in any "lands or resources." § 222.3(b). In other words, "Congress has not conferred upon citizens the right to graze stock upon the public lands. The government has merely suffered the lands to be so used." *Omaechevarria v. State of Idaho*, 246 U.S. 343, 352 (1918); *see also Oborne v. United States*, 145 F.2d 892, 896 (9th Cir. 1944) ("It is safe to say that it has always been the intention and policy of the government to regard the use of its public lands for stock grazing … under regulation through the permit system, as a privilege which is withdrawable … by the sovereign.").

Grazing permits may be canceled by the Chief of the Forest Service for any of several reasons, including if a permittee "knowingly and willfully makes a false statement or representation in the grazing application or amendments thereto." §§ 222.4(a)(1)(ii), 222.4(a)(5). A grazing permit may also be cancelled if the permittee is convicted of a criminal violation of the Endangered Species Act. 16 U.S.C. § 1540(b)(2). Furthermore, Federal law prohibits one from refusing to remove unauthorized livestock from NFS land when requested by a forest officer.  36

C.F.R. § 261.7(b). Those who engage in unauthorized livestock grazing are subject *inter alia* to unauthorized use fees "for all livestock grazing" on NFS lands. §§ 222.50(a)-(b), (h).

## VIII.  DISCUSSION

In its discussion of the alleged material facts, the Court intimated that Defendants have failed to raise a genuine issue of material fact as to whether the USFS's revocation of the permit bars them from grazing on the Allotment. In this section, the Court officially makes that conclusion and further concludes that Plaintiff is entitled to judgment as a matter of law on its claims.[8]

### A.  There Is No Genuine Fact Issue as to Whether Defendants Are Entitled to Graze on Allotment Without USFS Permit

The Court's analysis is two-fold. First, the Court holds that there is no genuine dispute of material fact as to Defendants' purported ownership of surface grazing rights because (1) the *sole* means by which Defendants may claim a property interest adverse to the United States is under the QTA and (2) in any event, the evidence submitted by Defendants is insufficient to raise a genuine issue of material fact. Second, the Court holds that even assuming Defendants are "at a minimum" the owners of the water rights within the Allotment, such interests would not entitle them to also graze cattle on the Allotment without a USFS permit. ECF 35 at 10–11.[9]

1.  <u>No Genuine Fact Issue Exists as to Ownership of Grazing Rights on Allotment</u>

"'The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'" *Gonzalez v. IMTT Epic LLC*, No. CIV 20-0421 RB/SMV,

---

[8] The amount of compensatory damages to which Plaintiff may be entitled remains in dispute and will be decided at another time.

[9] Because the Court holds that Defendants have not raised a genuine issue of material fact as to their ownership of grazing rights, the Court does not reach any of Defendants' arguments premised on such an assumption. *See, e.g.*, ECF 35 at 9 ("The United States asserts that the FLPMA [(the Federal Land Policy and Management Act of 1976)], the Organic Administration Act, and other acts give the United States the power to manage national forests … However, the cited acts do not authorize the United States to eject an [a]llotment owner upon revocation of a permit.").

2021 WL 4775994, at * 2 (D.N.M. Oct. 12, 2021) (*Tanner v. San Juan Cty. Sherriff's Office*, 864 F.Supp.2d 1090, 1106 (D.N.M. 2012)). After the movant meets that burden, the non-moving party must designate specific facts showing that there is a genuine issue for trial. *Id.* (citing *Tanner*, 864 F.Supp.2d at 1106). Plaintiff submitted the Declaration of Clyde King, Regional Surveyor for the USDA Forest Service, Southwestern Region, in which he testified that, relying on Bureau of Land Management Title Plats and USDA Forest Service Land Status Maps, Plaintiff owned the land in the Allotment. ECF 22-1 at 2. In addition, Plaintiff submitted USDA Forest Service maps, dated July 31, 2020, identifying Plaintiff as the owner of the Allotment's land. ECF 22-3 at 1–7. Plaintiff also submitted Bureau of Land Management maps, likewise identifying Plaintiff as the owner of the land. ECF 22-2 at 1–6.  Because the Court finds that Plaintiff has met its initial burden, showing an absence of evidence supporting Defendants' ownership of the Allotment, the burden shifts to Defendants to identify specific admissible facts showing there is a genuine issue that they have *any* ownership interest in grazing rights for the Allotment. The Court holds that Defendants have failed to identify such facts.[10]

On this point, the Court finds persuasive the reasoning in *United States v. Smith*, No. 2:16-cv-01493, 2018 WL 1956461 (D. Or. Apr. 3, 2018), *report and recommendation adopted*, 2018 WL 1953017, at *1 (D. Or. Apr. 24, 2018). In *Smith*, the United States brought a trespass action against Smith, for allegedly grazing cattle on the Log Creek Grazing Allotment ("Log Creek") without USFS authorization. 2018 WL 1956461, at *1. In response to the government's summary judgment motion, Smith argued that he owned grazing rights on Log Creek. *Id.* at **1, 5. In

---

[10] The Court emphasizes that Defendants' summary judgment evidence included no affidavit or declaration from any witness qualifiable under Federal Rule of Evidence 702 that countered or contradicted either declaration of Plaintiff's expert, Regional Surveyor Clyde King.  Nor have Defendants ever offered or pointed to evidence that King's assertions and opinions are unreliable in any way.  As the summary judgment evidentiary record stands, King's declarations are unrebutted and there is no genuine and material fact issue remaining on the question of liability for which a trial would be necessary.

support, Smith presented "numerous … documents … that he argued establish[ed] that his predecessors had cattle grazing rights in" the Log Creek Allotment. *Id.* at *6.

The district court held that "[w]hile [those] documents comprise[d] numerous title descriptions of property, records of ownership interests, instruments of property transfer, and other purported legal documents, *none* support[ed] [Smith's] argument regarding the creation, transfer, or ownership of grazing rights." *Id.* (emphasis added). The court also noted that it was "unaware of *any* doctrine of property law whereby ownership of land is divided into split estates in the way [Smith] allege[d]." *Id.* at *6 (emphasis added). Thus, the court concluded, the evidence Smith submitted was insufficient to support his claim on summary judgment. *Id.* at *7.

Like *Smith*, Defendants here claim ownership to a grazing estate they say was originally obtained by their predecessors. ECF 35 at 7. In support of their claim, Defendants submitted three homestead patents and six land surveys. ECFs 35-2 at 1–7 & 35-7 at 12–17. None of those documents, however, show that a separate grazing estate was *ever* established on the Allotment. Indeed, at oral argument, defense counsel conceded that there is no documentary evidence of Defendants' ownership of grazing rights before the Court. ECF 55 at 56:16-22. The submitted patents, moreover, account for only 280 acres[11] but it is *undisputed* that the Allotment spans 47,972 acres. ECF 22 at 3. Defendants do not provide *any* evidence that the Allotment's remaining 47,682 acres were *ever* held in private patent. And Defendants do not proffer *any* evidence that there is *any* overlap between the land described in the patents and the land that makes up the Allotment. Accordingly, Defendants have not presented evidence sufficient to raise a genuine dispute of

---

[11] Defendants proffered a patent to Hayden Hill, which does not specify the acreage granted. ECF 35-2 at 4. Defendants also presented patents to Melquiades Aragon for 160 acres, ECF 35-2 at 1, and to Benigno Jaramillo for 120 acres, ECF 35-2 at 6.

material fact that they own a grazing estate on the Allotment or that a separate grazing estate was ever even created on the Allotment.

Apart from these evidentiary shortcomings, Defendants face an insurmountable legal obstacle as well. "It is an established principle of jurisprudence in all civilized nations that the sovereign cannot be sued in its own courts, or in any other, without its consent and permission." *Alden v. Maine*, 527 U.S. 706, 745 (1999) (quoting *Beers v. Arkansas*, 61 U.S. 527, 529 (1858)). Thus, "[w]hen the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction." *United States v. Mottaz*, 476 U.S. 834, 841 (1986). Under the Quiet Title Act ("QTA"), the United States has "waive[d] [its] sovereign immunity from[] a particular type of action, known as a quiet title suit: a suit by a plaintiff asserting a 'right, title, or interest' in real property that conflicts with a 'right, title, or interest' the United States claims." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (quoting 28 U.S.C. § 2409a(d)). Notably, however, the QTA does not apply to "water rights." 28 U.S.C. § 2409a(a); *see also Diamond Bar Cattle Co. v. U.S.*, 168 F.2d 1209, 1211 n.3 (10th Cir. 1999) (same). The QTA "provide[s] the *exclusive* means by which adverse claimants [can] challenge the United States' title to real property." *Patchak*, 567 U.S. at 219 (emphasis added). Thus, "[i]f an adverse claim to title to real property cannot be brought under the QTA, it cannot be brought at all." *Public Lands for the People, Inc. v. U.S. Dept. of Agriculture*, 733 F. Supp. 2d 1172, 1191 (E.D. Cal. 2010) (citing *Leisnoi, Inc. v. United States*, 170 F.3d 1188, 1191 (9th Cir. 1999)).

Thus, Defendants cannot claim ownership of surface grazing rights because such a claim may *only* be brought under the QTA. *See Block v. North Dakota ex rel. Bd. of Univ. and School Lands*, 461 U.S. 273, 286 (1983) ("We hold that Congress intended the QTA to provide the

*exclusive* means by which adverse claimants could challenge the United States' title to real property." (emphasis added)). The Tenth Circuit has further held that the QTA applies to estates that amount to less than fee simple, such as Defendants' alleged surface grazing estate. *McKay v. U.S.*, 516 F.3d 848, 850 (10th Cir. 2008) (citing *Kinscherff v. United States*, 586 F.2d 159, 161 (10th Cir. 1978)). Because Defendants' *sole* means to challenge Plaintiff's ownership interests in the Allotment is to bring a claim under the QTA—and because the Court has already held that the QTA precludes Defendants from "challeng[ing] the United States' title to [this] real property," *Thiessen*, 2021 WL 1090702, at *9 (quotation omitted)—Plaintiff's ownership interest in the Allotment is not genuinely in dispute. *U.S. v. Santos*, 878 F. Supp. 1359, 1363 (D. Guam 1993) (holding that the government met its burden under Rule 56 to establish that it owned disputed land because the court had issued a prior ruling holding that defendant's adverse ownership claim was barred under the QTA's statute of limitations); *c.f. United States v. Wilson*, 3:09-CV-166-ECR-RAM, 2009 WL 10697529, at *4 (D. Nev. Dec. 22, 2009) (holding that there was no genuine dispute of material fact as to the ownership of disputed land because defendant would have been precluded from asserting an adverse ownership claim against the government under the QTA's statute of limitations).

### 2. Defendants' Alleged Ownership of Water Rights Does Not Give Rise to Separate Right to Graze on Allotment

Defendants cite the Mining Act of 1866 in several of their rebuttals to Plaintiff's statement of Undisputed Material Facts. *See* ECF 35 at 2–5. Defendants also claim that "[t]he 1866 Mining Act granted protection to the possessors and owners of vested water rights and they could not be taken away by the [sic] subsequent government action." *Id.* at 6. While Defendants have not explicitly cited the Mining Act as the authority for their argument that their alleged water rights confer attendant grazing rights, they appear to suggest that this is the case. Because the Tenth

Circuit has held that the Mining Act *does not* confer grazing rights to holders of state water rights, this Court similarly rejects Defendants' argument on this point.[12]

In *Diamond Bar Cattle Co. v. United States*, 168 F.3d 1209, 1210 (10th Cir. 1999), Kit and Sherry Laney (the "Laneys") held permits to graze on two NFS allotments in the Gila and Apache National Forests, which they and their predecessors had held since the 1880s. 168 F.3d at 1210. The Laneys lost their permits after failing to renew them. *Id.* at 1210. The Laneys sued the United States, seeking a declaration that they held grazing rights on the allotments. *Id.* at 1211. The district court granted summary judgment to the government. *Id.* at 1210. On appeal, the Laneys claimed that their water rights on the allotments included an "inseparable" right to graze livestock. *Id.* at 1210. The Tenth Circuit disagreed and affirmed the lower court's decision. *Id.* at 1211.

The Tenth Circuit began its analysis by noting that "[t]he United States has long recognized the validity of private water rights pursuant to state water law." *Id.* at 1215.[13] The Laneys argued that the Mining Law of 1866 "constitute[d] governmental recognition not just of their water right, but also of their 'inseparable' range right, which they contend[ed] [wa]s within the scope of their water right." *Id.* The Tenth Circuit rejected the Laneys' interpretation, however because it was contrary to "the language of the Act itself, which simply recognizes the right to the use of water," and "the well-settled body of law holding no private property right exists to graze public

---

[12] The only evidence Defendants have submitted in support of their ownership of water rights is Defendant Craig Thiessen's affidavit. ECF 35-8 at 1. It is not clear at all that this affidavit should be considered as appropriate summary judgment evidence. *See Hall v. Bellmon*, 932 F.2d 1006, 1111 (10th Cir. 1991) ("[A] nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." (citing Fed. R. Civ. P. 56(e); *Palucki v. Sears, Roebuck & Co*., 879 F.2d 1568, 1572 (7th Cir. 1989)). Nonetheless, for the purposes of its analysis, the Court will assume that Defendants own the water rights to at least some acreage within the Allotment. Ultimately, the Court need not decide nor express any opinion about the ownership of the water rights on the Allotment.

[13] The Tenth Circuit also analyzed the Laneys' water rights argument under New Mexico state law. *Diamond Bar*, 168 F.3d at 1213. Because Defendants have not made an argument under New Mexico law, the Court does not include the Tenth Circuit's holding with respect to New Mexico law.

rangelands." *Id.* Moreover, the court observed that "[v]irtually every attempt like [the Laneys'] to expand the reach of the Mining Act to include federal recognition of private property rights in federal lands has been soundly rejected." *Id.* (citing *Hunter v. United States*, 388 F.2d 148, 151 (9th Cir. 1967); *Gardner v. Stager*, 892 F. Supp. 1301, 1302 (D. Nev. 1995)). Thus, the Tenth Circuit concluded that "[a]t best, [the Laneys] possess[ed] a valid water right that is protected by the Mining Act." *Id.* at 1217. In other words, the court held that the Laneys' water rights did not translate into a right to graze.

For their own legal support, Defendants cite *Sacramento Grazing Ass'n, Inc. v. United States*, 135 Fed. Cl. 168 (2017) and *United States v. New Mexico*, 438 U.S. 696 (1978). These cases, however, offer no aid to Defendants' assertion that ownership of water rights is tantamount to ownership of grazing rights.  In *Sacramento Grazing*, the Sacramento Grazing Association, Inc. ("SGA") held water rights and a USFS permit to graze on the Sacramento Allotment located in the Lincoln National Forest in New Mexico. 135 Fed. Cl. at 171, 173–74. The United States Fish and Wildlife Service determined that the Sacramento Mountains Thistle was a threatened plant species warranting protection. *Id.* at 174. In its protection effort, the USFS decided to fence off many bodies of water on the Sacramento Allotment, thereby excluding use by SGA livestock. *Id.* Over time, the USFS also began restricting the number of cattle the SGA could graze on the Sacramento Allotment. *Id.* at 178–79. Because the SGA allowed its livestock to use restricted water sources, its grazing permit was repeatedly suspended but never cancelled. *Id.* at 180–81. The SGA sued the government "for an adjudication of its right to beneficial use of stock water sources within the Sacramento Allotment." *Id.* at 171. After a trial, the Court of Federal Claims held that the "SGA ha[d] established that the USFS prevented SGA from exercising the right to beneficial use of stock

water sources within the Sacramento Allotment … and thereby effected a taking in violation of the Fifth Amendment to the United States Constitution." *Id.* at 207.

Importantly, the court in *Sacramento Grazing* did not hold that the SGA's stockwatering rights had an attendant grazing right. In fact, throughout the entirety of the *Sacramento Grazing* litigation, the SGA held a valid USFS grazing permit. At best, therefore, *Sacramento Grazing* supports the proposition that state water rights are a protected property interest under the Fifth Amendment.  But here, because Defendants have brought no Fifth Amendment takings claim, the relevance of the *Sacramento Grazing* decision is negligible.[14]

The Supreme Court's decision in *United States v. New Mexico*, does little to support Defendants' claim. The question in that case was "what quantity of water, if any, the United States reserved out of the Rio Mimbres when it set aside the Gila National Forest in 1899." 438 U.S. at 698. As part of its decision, the Supreme Court recognized that stockwatering rights in a national forest "must be allocated under state law." *Id.* at 716–717.  But this Court is unconvinced that, just because stockwatering rights in a national forest are controlled by state law, owners of  such rights enjoy the additional right to use such water to *graze livestock* on NFS land. Indeed, the Supreme Court of New Mexico has held as much. *Walker v. United States*, 162 P.3d 882, 890–92 (N.M. 2007) ("[T]he requirement that water must be put to beneficial use [(under New Mexico law)] does not give rise to an interminable right to continue that same beneficial use … For example, if one acquires a water right by beneficially using water in a milling operation, which operation is subsequently shut down due to environmental violations, the mill operator cannot

---

[14] Four years after the Court of Federal Claims rendered its 2017 decision, it granted in part and denied in part a motion to reconsider. *Sacramento Grazing Ass'n, Inc. v. United States*, No. 04-786, 2021 WL 3124251 (Fed. Cl. July 26, 2021). In its 2017 opinion, the court had found that the plaintiffs had established a prima facie right to beneficial use of stockwater under New Mexico law. *Sacramento Grazing Ass'n, Inc.*, 135 Fed. Cl. at 194–95. In its 2021 decision, however, the court concluded as a matter of Fifth Amendment takings analysis that the plaintiffs did *not* possess a property interest in such water rights. 2021 WL 3124251, at *15–16. Consequently, whatever support Defendants may have derived from the 2017 *Sacramento Grazing* decision evaporated in 2021.

claim a right to continue milling just to protect the water rights. In this case, the Walkers' ability to acquire and use their water rights on the [NFS grazing] allotments was conditioned on the permission of the federal government to go on the land. The Walkers were thus responsible for maintaining their license to graze on the public land, and since they lost that license, they cannot now rely on a right to continue a particular beneficial use to maintain the water right that they were able to acquire by way of government permission in the first place.").

### B.  Defendants' Continued Grazing on the Allotment Violates Federal Regulations

Defendants do not contest that they (1) no longer have a permit to graze on the Allotment, UMF # 9, and (2) did not remove their livestock from the Allotment after the Permit's cancellation was effective, UMFs ## 18, 20. Because Defendants' continued and unpermitted grazing of livestock on NFS land is uncontested, and because they have not put forth evidence sufficient to create a triable fact issue that they independently own the grazing rights to the Allotment, Plaintiff is entitled to judgment as a matter of law that Defendants have violated federal regulations. 36 C.F.R §§ 222.3(a), 261.7(a); *see also supra* at Section VII(B).

### C.  Defendants Have Trespassed on the Allotment

Neither Plaintiff nor Defendants briefed the issue of whether state or federal trespass law controls this case. Nevertheless, under both state and federal law, Plaintiff is entitled to judgment as a matter of law on its trespass claim.

It is well established that the federal government, like any other landholder, is entitled to protect its property against trespassers. *Camfield v. United States*, 167 U.S. 518, 524 (1897). "The use, occupancy, or development of any portion of public lands contrary to any regulation … or other responsible authority … is unlawful and prohibited." 43 U.S.C. § 1733(g). Since Defendants have continued to graze livestock after their USFS authorization was terminated, Defendants are

trespassers on the Allotment. *U.S. v. West*, 232 F.2d 694, 698 (9th Cir. 1956) ("Admittedly the Government is vested with legal title. It must be conceded as well that any license appellees may have had to occupy the lands at the sufferance of the Government has been terminated. Hence, as between the Government and appellees, the latter are now clearly trespassers."); *see also Diamond Bar*, 168 F.3d at 1217 (affirming district court's decision enjoining plaintiffs from further unauthorized grazing, assessing unauthorized use fees, directing removal of plaintiffs' cattle, and finding plaintiffs in trespass of federal lands because they grazed cattle on NFS allotments without a permit).

The answer is the same under state law. "The gist of an action of trespass to real property is in tort for the alleged injury to the right of possession." *Pacheco v. Martinez*, 636 P.2d 308, 312 (N.M. 1981); *Bailey v. Braiser*, No. A-1-CA-36554, 2021 WL 2809986, at \*5 (N.M. Ct. App. July 6, 2021) (same). "Every unauthorized entry upon the land of another is a trespass which entitles the owner to a verdict for some damages." *North v. Public Service Co. of New Mexico*, 608 P.2d 1128, 1129 (N.M. 1980). Because Defendants' presence on the Allotment after the cancellation of their grazing permit became effective was not authorized, Plaintiff is entitled to judgment as a matter of law under federal and state trespass law.

## IX. CONCLUSION

Defendants have "fail[ed] to make a showing sufficient to establish the existence of [a genuine factual dispute]," *Celotex*, 477 U.S. at 322, regarding Plaintiff's ownership of both the Allotment and its grazing rights. Nor have Defendants proffered any admissible evidence that they are entitled to graze livestock on the Allotment without a permit (which they no longer possess). Consequently, Plaintiff is entitled to judgment as a matter of law on the issue of liability as to each of its claims.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Leave to File Surreply is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff shall submit no later than **January 14, 2022,** a proposed form of order ejecting Defendants from the Canyon del Buey Allotment and permanently enjoining them from grazing livestock or otherwise trespassing on the Allotment without a valid permit.

**IT IS FINALLY ORDERED** that the parties shall meet and confer on the issues that remain outstanding in this litigation, including the issue of compensatory damages.  No later than **January 21, 2022**, the parties shall file a joint status report discussing those issues, along with a proposed schedule for the litigation necessary to resolve them.

**SO ORDERED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*